## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| JOSEPH FOTE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> MIDLAND CREDIT MANAGEMENT, INC. and MIDLAND FUNDING, LLC, <br><br> Defendants. | Case No.: 19-cv-431 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION

2.     The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.     Plaintiff Joseph Fote is also an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

6. MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. MCM is a debt collector as defined in 15 U.S.C. § 1692a.

9. Defendant Midland Funding, LLC ("Midland Funding") is a limited liability company with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

10. Midland Funding is engaged in the business of collecting debts, in that it purchases and receives assignment of consumer debts that are in default at the time it acquires them.

11. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct

2

crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *Torres v. LVNV Funding LLC*. 2018 U.S. Dist. LEXIS 49885, at *13-15 (N.D. Ill Mar. 27, 2018); *Hordgev. First Nat'l Collection Bureau, Inc.*, 2018 U.S. Dist. LEXIS 132435, at *12-13 (S.D. Tex. Aug. 7, 2018); *Meola v. Asset Recovery Solutions*, 2018 U.S. Dist. LEXIS 139101, at *13-18 (E.D.N.Y. Aug. 15, 2018).

13.     The primary purpose of Midland Funding's business, and Midland Funding's principal purpose, is the collection of consumer debts.

14.     Midland Funding's website contains an "FAQ" webpage, which states:

**Who is Midland Funding?**

Midland Funding LLC is one of the nation's largest buyers of unpaid debt. For example, we may buy an unpaid credit card account. This happens when a company decides to sell the unpaid account rather than continue collection efforts. Midland Funding LLC purchases accounts with an unpaid balance when:

- An account has gone at least 180 days without making a payment, or
- Someone paid less than the minimum monthly payment for at least 180 days, and
- The original creditor wishes to sell the right to collect on the account balance.

https://www.midlandfunding.com/faqs/.

15.     Midland Funding is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars.  The 2013 10-K filing for Midland Funding's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

16.     According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S.  As Midland paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

17.     Midland Funding's role generally is to purchase and receive assignment of consumer debts that are in default at the time Midland Funding acquires them.  Directly and indirectly through its affiliates, including Encore and MCM, Midland Funding uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts.  The primary purpose of debt buyers like Midland Funding is debt collection. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

18.     Midland Funding uses debt collectors, including MCM, to collect allegedly defaulted debts that have been assigned to Midland Funding.  Midland Funding uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

19.     Midland Funding by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually.  Wisconsin Circuit Court Access (CCAP), for example, shows that Midland Funding filed almost 1,000 small claims lawsuits against Wisconsin consumers in the month of January 2019 alone.  Upon information and belief, all or almost all of these small claims actions are proceedings to collect consumer debts from Wisconsin residents.

4

20.     Upon information and belief, when Midland Funding obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

21.     Midland Funding is a "debt collector" as defined in 15 U.S.C. § 1692a.

22.     A company meeting the definition of a "debt collector" under the FDCPA (here, Midland Funding) is vicariously liable for the actions of a second company (such as MCM) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (citing *Pollice*, 225 F.3d at 404-05).

## FACTS

23.     On or about May 18, 2018, MCM mailed a debt collection letter to Plaintiff regarding an alleged debt owed to Midland Funding with an original creditor listed as "SYNCHRONY BANK." A copy of this letter is attached to this Complaint as Exhibit A.

24.     Upon information and belief, the alleged debt referenced in Exhibit A was incurred through the use of a credit card, used exclusively for personal, family, and household purposes.

25.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

26.     Upon information and belief, Exhibit A is a form debt collection letter, used by Defendants to attempt to collect alleged debts.

27.     Upon information and belief, Exhibit A was the first written communication MCM sent to Plaintiff regarding this alleged debt.

28.     Plaintiff received Exhibit A within a few days of its mailing.

5

29. The reverse side of Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

30. Exhibit A also includes the following:

> **Important Contact Information**
>
> Send disputes or an instrument tendered as full satisfaction of a debt to:
> Attn: Consumer Support Services
> 2365 Northside Drive Suite 300
> San Diego, CA 92108
> You may also call (866) 361-0420

31. On or about June 8, 2018, MCM mailed another debt collection letter to Plaintiff regarding the same alleged debt owed to Midland Funding. A copy of this letter is attached to this Complaint as Exhibit B.

32. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

33. Upon information and belief, Exhibit B is a form debt collection letter, used by Defendants to attempt to collect alleged debts.

34. Plaintiff received Exhibit B within a few days of its mailing.

35. Exhibit B includes an offer to resolve Plaintiff alleged debt through a series of biweekly installment payments.

36. Exhibit B is dated about three weeks after Exhibit A.

37. Plaintiff received Exhibit B within thirty days after receiving Exhibit A.

38. Exhibit B includes the following:

6

The opportunity to pay listed above does not alter or amend your validation rights as described in our previous letter to you. Please contact our office at 866-452-2381 by 6/30/2018 to take advantage of the above.

39.     The representation in <u>Exhibit A</u> that the consumer "may also call" to dispute the debt and the implication in <u>Exhibit B</u> to the same effect is deceptive and misleading to the unsophisticated consumer because it overshadows the disclosure that MCM will provide verification of the debt and the name and address of the original creditor upon receipt of the consumer's *written* dispute. *See,* 15 U.S.C. § 1692g(b).

40.     The practical effect of the request to call MCM is to discourage consumers from disputing debts in writing.

41.     An oral dispute does not trigger the FDCPA verification requirements, which includes a temporary suspension of collection efforts until verification is provided. 15 U.S.C. § 1692g(b).

42.     To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

43.     The instruction in <u>Exhibits A & B</u> that the consumer may submit disputes via telephone is false, deceptive, misleading, and confusing to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice, and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing. *Macy v. GC Servs. Ltd. P'ship.*, Civil Action No. 3:15-cv-819-DJH, 2016 U.S. Dist. LEXIS 134421 *14-

7

15 (W.D. Ky. Sep. 29, 2016); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844-45 (E.D. Va. 2011).

44.     Congress adopted a specific FDCPA dispute procedure in 15 U.S.C. § 1692g "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n.6 (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

45.     <u>Exhibits A and B</u> confusingly and misleadingly direct the consumer to notify MCM about disputes without informing the consumer that oral disputes do not trigger verification.

46.     Courts throughout the country have found that a debt collector overshadows the debtor's statutory validation rights by encouraging consumers to dispute their debts by telephone. *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *McCabe*, 272 F. Supp. 2d at 743-44 (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking*, 783 F. Supp. 2d at 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F. Supp. 2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman &*

*Dicker, LLP*, 217 F. Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 151-152 (3d Cir. 2013); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

47.     Furthermore, the overshadowing effect is compounded by <u>Exhibit B</u>, because the letter does not reference the debtor's validation rights or explain the effect of disputing the debt orally or in writing. *Velazquez v. Fair Collections & Outsourcing, Inc.*, 2013 U.S. Dist. LEXIS 124895, at *17-22 ("the absence of a reprinted validation notice or reference to the debtor's right to request validation, combined with the specific text of a second letter, can create impermissible overshadowing or contradiction."); *Laniado v. Certified Credit & Collection Bureau*, 705 Fed. Appx. 87 (3d Cir. 2017) ("Given the substance and form of the second letter, we conclude that it did overshadow and contradict the notice. In fact, the first letter appears to represent the functional equivalent of a validation notice set forth on the reverse side of a single letter. Just as the debt collector in *Caprio* set forth the 'please call' language on the front of the letter and 'relegated' the 'required Validation Notice' to 'the back side of the Collection Letter,' Certified Credit included 'PLEASE CALL' language in a letter mailed ten days before the expiration of the validation period—while 'relegating' the legally mandated validation notice to a letter it had sent to Laniado more than three weeks earlier. Unlike its counterpart in *Caprio* (which included an instruction in all capital letters directing *Caprio* to see the reverse side for important information), the March 5, 2014 letter did not even mention or otherwise refer to the February 13, 2014 letter. Given the

9

circumstances, it is certainly conceivable that the least sophisticated debtor wishing to dispute the debt could follow the apparent instruction set forth in a mailing received shortly before the deadline and make an ineffective toll-free phone call to do so.") (internal citations omitted); *see also, e.g.*, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

48.     MCM did not effectively convey to the consumers their rights under the FDCPA. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003); *see also Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act.").

49.     The consumer is not required to rely upon the debt collector to voluntarily comply with the FDCPA. *McCabe*, 272 F. Supp. 2d at 738 ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification. If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

50.     Failure to provide the correct validation notice within five days of the initial communication with Plaintiff and the class is a *per se* violation of the FDCPA. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 2016 U.S. App. LEXIS 6361 *15-16 (7th Cir. Apr. 7, 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

10

51.     For purposes of Plaintiff's claim under 15 U.S.C. §§ 1692e and 1692e(10), Defendants' omission is a material violation of the FDCPA. A consumer who attempts to orally exercise verification rights or a request for the identity of the original creditor does not effectively invoke his or her rights under 15 U.S.C. § 1692g(b):

> **(b) Disputed debts**
> If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector *in writing* that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(emphasis added).

52.     MCM's statements encouraging the consumer call with disputes about their alleged debts overshadows the validation notice.  15 U.S.C. § 1692g.

53.     Immediately after offering terms of payment and referencing Plaintiff's "validation rights as described in our previous letter," Exhibit B instructs the consumer: "Please contact our office at 899-452-2381 by 6/30/2018 to take advantage of the above."

54.     The statement is ambiguous because it would be unclear to the unsophisticated consumer whether "to take advantage of the above" referenced "[t]he opportunity to pay" or their "validation."

11

55.     Where the unsophisticated consumer understands the instruction as referencing the consumer's validation rights, the instruction further contradicts and overshadows the validation notice included in MCM's initial letter to the consumer because the statement: (1) instructs the consumer to contact MCM by phone, which does not trigger the consumer's validation rights, and (2) provides a deadline that contradicts the actual end of the validation period, which upon information and believe would have ended on or around June 20, 2018.

56.     Further, Exhibit B instructs the consumer not to "hesitate" to contact Defendants by phone "for further information."

57.     In fact, such "further information" may include requests for the original creditor's address or information that would validate the debt.

58.     Thus, the instruction not to "hesitate" to contact Defendants for "further information" alongside the reference to the consumer's "validation rights" also misleads the consumer to believe oral disputes as disputes made in writing during the initial thirty-day period following the receipt of the validation notice.

59.     Plaintiff was confused and misled by Exhibits A and B.

60.     The unsophisticated consumer would be confused and misled by Exhibits A and B.

### ***The FDCPA***

61.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting

12

*Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same);

13

*see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

62.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

63.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

64.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

65.     15 U.S.C. § 1692g(b), among other things, provides: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

## COUNT I – FDCPA

66.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67.     Count I is brought against both Defendants.

68.     Exhibit A contradicts and overshadows the disclosure that the consumer must submit a dispute or request for the name and address of the original creditor in writing to trigger the verification requirement.

69.     Exhibit A is deceptive, misleading, and confusing to the unsophisticated consumer.

70.     Defendants violated 15 U.S.C. §§ 1692e, and 1692e(10), and 1692g(b).

## COUNT II – FDCPA

71.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72.     Count II is brought against both Defendants.

73.      By instructing the consumer to "Please contact our office at 899-452-2381 by 6/30/2018 to take advantage of the above" and not to "hesitate" to call for "further information," Exhibit B contradicts and overshadows the validation notice included in the initial letter to the consumer because the unsophisticated consumer would understand that communicating disputes or requests for original creditor information orally was equally effective as communicating such disputes in writing.

74.     Defendants violated 15 U.S.C. §§ 1692e, and 1692e(10), and 1692g(b).

## CLASS ALLEGATIONS

75.     Plaintiff brings this action on behalf of two classes.

15

76.     Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) between February __, 2018 and February __, 2019, inclusive (e) that was not returned by the postal service.

77.     Class II consists of  (a) all natural persons the State of Wisconsin, (b) who were sent a series of collection letters in the form represented by Exhibits A and B to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) where MCM mailed the letter in the form of Exhibit B fewer than 30 days after mailing the letter in the form of Exhibit A, (e) and both letters were mailed between March 26, 2018 and March 26, 2019, inclusive, (e), and neither letter was returned by the postal service.

78.     Each class is so numerous that joinder is impracticable.

79.     Upon information and belief, there are more than 50 members of Class I.

80.     Upon information and belief, there are more than 50 members of Class II.

81.     There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members.  The predominant common question is whether Exhibits A and/or B violate the FDCPA.

82.     Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

83.     Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

84.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

85.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and

the Class and against Defendants for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  March 26, 2019

ADEMI & O'REILLY, LLP

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com